## J. M. QUINN, Appellant, v. TOBIAS TOBIASON.

**Landlord and tenant:** BREACH OF COVENANT: EVIDENCE. In this action by a landlord for breach of his tenant's agreement to destroy noxious weeds on the premises the evidence is held to support a finding that the covenant was not broken.

**Same.** The lease in this case obligated the tenant to exercise reasonable care to destroy noxious weeds and there was evidence tending to show that the most effectual way of doing so was to seed the land to grass. The landlord was obligated to furnish the grass seed, which he failed to do. *Held,* that the tenant was not required to seed the entire premises as a means of destroying the weeds.

**Same:** EVIDENCE. In this action for breach of the tenant's covenant to destroy noxious weeds, statements of the landlord previously made that the farm had increased in value and that the tenant was a good farmer were not prejudicial, and were competent as admissions of the landlord, inconsistent with his contention on the trial that the farm had been damaged by the default of the tenant.

*Appeal from Shelby District Court.*—HON. E. B. WOOD-
RUFF, Judge.

FRIDAY, JANUARY 12, 1912.

ACTION to recover damages for breach of covenant in a lease, by which it was stipulated that defendant, as tenant, was to use every effort to kill and destroy cockleburs on the land of plaintiff covered by such lease. The defendant denied any breach of the agreement on his part, and by way of counterclaim, asked judgment for his expense in furnishing grass seed and repairing fences, which

items of expenditure should have been met by the plaintiff
under the terms of the lease.   There was a trial to a jury
and a verdict accompanied by special findings in favor
of the defendant in an amount covering a substantial por-
tion of his counterclaim.   From judgment on this verdict,
the plaintiff appeals.—*A ffirmed.*

*Cullison & Cullison,* for appellant.

*E. S. White,* for appellee.

McCLAIN, C. J.—The lease in question, which was for
five years commencing the 1st of March, 1905, contained
the following provisions: "It is understood and known by
the parties hereto that the leased land is quite thoroughly
filled with cockleburs, and lessee herein agrees to use ev-
ery effort to kill and destroy the same. . . . On or
before August 30th of each year, during the life of this
lease, Tobias Tobiason shall cut all cockleburs on said
leased land before they mature and ripen seed.   And, in
case of this failure to cut said cockleburs within the above-
specified time, he shall forfeit all his rights under this
lease at the option of the lessor herein."

In presenting to the jury the question whether under
the evidence there had been a violation of this stipulation
to plaintiff's damage, the court submitted certain special
interrogatories, which, with the answers thereto returned
by the jury, were as follows:

(1)   Did the defendant use every effort to kill and
destroy the cockleburs on the farm in question?   Ans.  No.

(2)   Did the defendant, on or before August 30th of
each year during the term of his lease in question, cut all
the cockleburs on said farm before they matured and ripen-
ed seed?   Ans.   No.

(3)   If the defendant had used every effort to kill
and destroy said cockleburs, and on or before the 30th day
of August of each year during the term of his lease, had

cut all of said cockleburs before they matured and ripened seed, would said premises be free or practically free from the cockleburs at this time? Ans. No.

(4) Are said premises free, or practically free, from cockleburs at this time? Ans. No.

(5) Are said premises now seeded with cockleburs to such a degree or in such quantities as to decrease their rental value? Ans. No.

(6) Will the cockleburs now on said premises injure the soil of the same? Ans. No.

(7) If the defendant had used every effort to kill and destroy the cockleburs on the farm during the term of the lease from March 1, 1905, to the present time, would said premises now be free from cockleburs or practically so? Ans. No.

(8) What do you find from the evidence to be the reasonable annual rental value per acre for farming purposes of the premises in question now, if the same were free from cockleburs? Ans. $3.

The principal claims of counsel for appellant are that some of these answers were so entirely without support in the evidence, and so far in conflict with the undisputed evidence, that the verdict should have been set aside on appellant's motion for a new trial on the ground that the jury must have been governed by passion and prejudice in its deliberations and the return of its verdict; and that there is such inconsistency between the answers to the first and second interrogatories and those returned to other interrogatories that passion and prejudice were clearly apparent.

There was evidence, however, tending to show that the only effectual way of clearing land of cockleburs after it had become thoroughly infested with them was to seed it down to grass, and keep it in meadow or pasture for at least five years, and that even a longer period of such treatment might be necessary to entirely eradicate the cockleburs; and, further, that the treatment required in the lease

1 LANDLORD AND TENANT: breach of covenant: evidence.

of cutting all the cockleburs before they mature and ripen seed and on or before the 30th of August of each year might be quite ineffectual. There is nothing in the lease to indicate any intention that the farm should thus be seeded down to grass, and kept in that condition for the term of the lease. On the contrary, it appears that the farm was leased to be farmed in the usual way, portions of it being in grass, other portions under cultivation; and it also appears that it was within the contemplation of the parties to have some part of the land sown to grass provided plaintiff should furnish the seed, which he failed to do. Under this state of the record, we can not say as a matter of law that, if defendant had used every effort to kill and destroy the cockleburs which was within the reasonable contemplation of the parties, the land would have been freed from them, and at the termination of the lease would have had an increased rental value beyond that which it actually had as surrendered, or that the failure of the defendant to use every effort to kill and destroy the cockleburs within the reasonable contemplation of the parties, or his failure to cut them each year on or before the 30th of August, before they matured and ripened seed, caused the land to have a less rental value than it would have had if these precautions had been taken. The fact is that the evidence was in conflict on the issues submitted to the jury, and the findings of the jury were neither so far without support in the evidence nor in conflict as to warrant an interference with its findings or require a holding that the verdict and answers to interrogatories were the result of passion and prejudice. The finding that the rental value of the farm per acre for farming purposes, if free from cockleburs, would be only $3 per acre is supported by evidence tending to show that the soil had been impoverished by repeated cropping, and that the improvements on the farm were poor and in bad condition. The jury may well have taken these circumstances into account,

and, in view of the testimony as to the rental value of other farms in the neighborhood with better improvements and in better condition, may have found without passion and prejudice that the rental value of this farm was as stated.

Counsel assume that, if the proper method of eradicating cockleburs was by seeding the land to grass, the defendant was bound to pursue this method with the result that, when surrendered, the entire farm 2 SAME. would have been in grass, and would have had the rental value of meadow and pasture land. But, as already suggested, the lease does not indicate any intention as between the parties that the farm should be thus treated. To thus treat it would have involved an expense on the part of defendant in improving the plaintiff's farm which he was not bound to incur.

A witness was permitted to testify, over objection, that plaintiff, about two years before the trial, declared to the witness that the farm had increased in value while he owned 3 SAME: evi- it from $50 per acre to $100 or $150 per dence. acre, and that defendant was a good tenant and a hard worker. We can not see that this testimony was possibly prejudicial to the plaintiff, and, at any rate, it was competent as showing an admission of plaintiff to some extent inconsistent with his contention on the trial that through the fault of defendant the farm had been materially damaged, for rental value must depend to some extent on actual value and *vice versa*.

Some instructions with reference to defendant's counterclaim are made the basis of complaint, but, as applied to the evidence on the issues presented in the record, we think that the instructions were not misleading, and, if further instructions were desired to cover the matters as to which the complaint is now made, they should have been asked.

The judgment of the trial court is *affirmed*.